J-A35001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: A.W.-B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: A.W.-B. | No. 1263 WDA 2013 |

Appeal from the Dispositional Order Entered July 22, 2013
In the Court of Common Pleas of Allegheny County
Juvenile Division at No(s): 85269-A, 0854-10

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:           **FILED JANUARY 20, 2016**

Appellant, A.W.-B., appeals from the July 22, 2013 disposition of the juvenile court, imposed after the court adjudicated him delinquent of firearm offenses. Appellant challenges the juvenile court's order denying suppression of the seized firearm, as well as the weight of the evidence supporting his delinquent adjudication. After careful review, we reverse on suppression grounds.

On the evening of December 10, 2012, Pittsburgh Police Officer Desaro (Desaro), and his partner, Pittsburgh Police Officer Hoyson (Hoyson), responded to multiple, anonymous reports of gunshots fired near the 1000 block of Brushton Avenue, in the Homewood neighborhood in Pittsburgh. These reports, relayed from police dispatch to Desaro and Hoyson, described the shooters as two black males, one wearing a red hoodie, and the other wearing a black jacket with red or orange stripes on the shoulders. Once Desaro and Hoyson arrived on the scene, they entered a building at 1040 Brushton Avenue and proceeded to the second floor where they heard

Pittsburgh Police Officer Kosko's (Kosko) voice. Once there, Desaro and Hoyson observed that Kosko had already detained two individuals who matched the descriptions relayed by dispatch, Deon Turner (Turner) and Appellant. When Desaro and Hoyson arrived, Kosko was patting-down Turner, who was wearing a black jacket with orange and red stripes on the shoulders. That pat-down uncovered a firearm. Desaro subsequently conducted a pat-down of Appellant but found nothing.

During this time, it was discovered by the officers that Appellant was a minor who lived in the building where he was detained. Based on this information, Hoyson decided to notify Appellant's mother. When Hoyson made contact with Appellant's mother, he asked for her permission to search the apartment for firearms. Appellant's mother directed Hoyson to contact the apartment's lessee, Shanelle, who consented to a search of Appellant's bedroom. Subsequently, Hoyson discovered a firearm with an altered serial number in the closet of Appellant's room.

Appellant was charged as a juvenile with possession of a firearm by a minor, 18 Pa.C.S. § 6110.1, and possession of a firearm with an altered manufacturer's number, 18 Pa.C.S. § 6110.2. On January, 19, 2013, Appellant filed a motion to suppress the seized firearm before the Honorable Judge Dwayne Woodruff in the Juvenile Section of the Family Division of the Allegheny County Court of Common Pleas ("trial court"). The trial court held a hearing to decide that motion on June 17, 2013. At that hearing, the court heard testimony from Desaro and Hoyson; however, Kosko did not testify.

- 2 -

Appellant's suppression motion was denied at the end of that hearing, and the court immediately proceeded to trial, where Appellant was adjudicated delinquent of both offenses. Appellant filed a motion to reconsider the denial of his suppression motion the next day, which was later denied on July 1, 2013. On July 9, 2013, disposition was deferred until July 31, 2013; however, Appellant was actually committed to a juvenile facility on July 22, 2013, and the July 31, 2013 hearing was never held. Appellant filed a timely notice of appeal on August 7, 2013.[1]

Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement on November 30, 2013. The trial court issued an unresponsive Rule 1925(a) opinion on August 5, 2015.[2] Appellant now presents the following questions for our review:

_____

[1] The actual date of disposition in this case is not completely clear. However, the Commonwealth advises that Appellant's notice of appeal was timely based on the July 22, 2013 commitment date. *See* Commonwealth's Brief, at 3 n.1; *see also* Delinquency Commitment and Transportation Order, 7/22/13. Our own review of the record indicates that the earliest possible date of disposition in this case was July 9, 2013. A hearing was held on that date, but the transcript from that hearing does not indicate that a disposition was actually entered. What is clear from the record is that disposition had not been entered when that hearing began. Given these observations, we can conclude that Appellant's appeal was timely, as it was filed within 30 days of both the July 9, 2013 hearing and the July 22, 2013 commitment date.

[2] Despite taking over 600 days to issue an opinion in this case, the trial court failed to address the claims raised by Appellant in his Rule 1925(b) statement. Judge Woodruff's opinion begins by reciting the procedural
*(Footnote Continued Next Page)*

    I.   Did the trial court err when it determined Officer Kosko
         possessed reasonable suspicion to detain A.W.B. following
         an a[]nonymous tip, despite Officer Kosko['s] not
         testifying, or even being present at the suppression
         hearing?

    II.  Was the verdict rendered [] against the weight of the
         evidence presented, where the finding of a firearm in
         A.W.B.'s bedroom that he shares with two other people[]
         cannot support A.W.B.'s adjudications relating to
         possession of a firearm?

Appellant's Brief, at 6 (unnecessary capitalization omitted).

Notably, our review of this case is somewhat hindered by the trial court's failure to file a responsive opinion. However, neither party is requesting that we remand for the production of a new, responsive opinion Furthermore, the trial court placed the reasons for denying Appellant's suppression on the record at the suppression hearing. Given this existing record, and the parties' briefs, we conclude that we have adequate information before us to render a decision.

Appellant's first claim concerns the trial court's denial of his motion to suppress the seized firearm as the fruit of an unlawful detention conducted by Kosko. Specifically, Appellant contends that the Commonwealth failed to demonstrate that Kosko possessed reasonable suspicion to detain Appellant. One aspect of Appellant's argument is his contention that the Commonwealth failed to meet its burden to demonstrate reasonable

_(Footnote Continued)_ ————————————

history of this case. However, the subsequent analysis provided in the opinion does not relate to Appellant's case at all.

suspicion based on the fact that Officer Kosko never testified at the suppression hearing.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012) (quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa. Super. 2012)).

Here, Desaro and Hoyson testified at the suppression hearing held prior to trial on June 17, 2013. However, Kosko did not testify, and there is nothing in the record explaining or excusing his absence. Based on his absence, Appellant's trial counsel argued that there was simply inadequate evidence to demonstrate whether Kosko possessed reasonable suspicion when he detained Appellant, a position that Appellant currently maintains on appeal.

> [I]t is well established that a police officer may conduct a brief investigative stop of an individual, if the officer observes unusual

conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. ***Commonwealth v. Preacher***, 827 A.2d 1235, 1238 (Pa. Super. 2003). "An investigatory stop subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Such an investigatory stop is justified only *if the detaining officer* can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion." ***Commonwealth v. E.M.***, 558 Pa. 16, 735 A.2d 654, 659 (1999) (citations omitted).

***Commonwealth v. Wiley***, 858 A.2d 1191, 1194 (Pa. Super. 2004) (emphasis added).

The trial court based its decision to deny suppression on the following facts. First, Desaro and Hoyson testified that they responded together to the 1000 block of Brushton Avenue due to multiple, anonymous calls reporting the shooting. N.T., 6/17/13, at 6, 19, 36. Second, Hoyson testified that when he arrived at the scene with Desaro, he noticed that no one was outside, which was "odd for that area." ***Id.*** at 20, 36-37.[3] Third, Desaro and Hoyson found that Kosko had detained Appellant and Turner near the shooting, and that Appellant and Turner were wearing clothes that matched what was reported by the anonymous calls. ***Id.*** at 9, 21, 37. Based on these circumstances, the trial court determined that police had "enough to have a pat-down[,]" *i.e.*, that they had reasonable suspicion to temporarily detain Appellant and Turner. ***Id.*** at 37.

---

[3] This fact, the Commonwealth argues, corroborates that there had recently been a shooting.

We conclude that the trial court's factual findings are not supported by the record. Simply put, Kosko did not testify and, as a result, the Commonwealth did not establish that he had knowledge of any of the facts testified to by Desaro and Hoyson when he detained Appellant and Turner. Thus, the trial court simply did not have enough information before it to reach the legal conclusion that Kosko, the detaining officer, had specific and articulable facts upon which to reasonably conclude that Appellant and/or Turner had been involved in criminal activity. *Wiley*, *supra*. Desaro and Hoyson did not observe Kosko detain Appellant and Turner. Desaro and Hoyson could not testify as to whether Kosko knew about the anonymous tips regarding the shooting, the corresponding descriptions of the actors, or the suspicious absence of people at the scene. Indeed, whether they could testify to Kosko's knowledge in that regard is irrelevant because they did not do so. Moreover, due to Kosko's absence, Appellant was unable to question him as to whether he was aware of any of these facts.

It is true that "the investigating officer need not have personal knowledge of the facts that support" reasonable suspicion or probable cause for a detention. *Commonwealth v. Korenkiewicz*, 743 A.2d 958, 966 (Pa. Super. 1999) (*en banc*). He or she "may reasonably rely upon radio transmissions so long as the officer issuing the information has received reasonably trustworthy information sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing an offense." *Id.* at 966-67. However, in this case, there was no evidence that

Kosko had received the same information from dispatch as heard by Desaro and Hoyson. There is also no evidence that Kosko was aware of Hoyson's observation regarding the suspicious lack of people at the scene of the reported shooting.

We acknowledge that there is no bright-line rule holding that the absence of a detaining or arresting officer's testimony, *per se*, prevents the Commonwealth from meeting its burden at a suppression hearing. Indeed, in some circumstances, a detaining or arresting officer's testimony will be largely irrelevant to certain suppression issues.[4] It may even be possible that the Commonwealth can sustain its burden without such critical testimony in circumstances where the events immediately surrounding an arrest/detention itself are at issue. However, the circumstances of the instant case do not present us with adequate reasons to overlook Kosko's absence, because no one else witnessed Appellant's initial detention, and because no one testified regarding what information was conveyed to Kosko before he detained Appellant.

We therefore conclude that the trial court erred when it denied Appellant's suppression motion. The court's legal conclusions were based on facts that were not adequately supported by the record. As the firearm at

_____

[4] For example, such testimony would appear unnecessary when litigating the validity of a warrant, or when a motion to suppress is based upon events that occur after a defendant is lawfully taken into custody.

issue was discovered pursuant to a consensual search that arose directly out of that ostensibly illegal detention, and because the Commonwealth made no attempt to demonstrate a break in the causal chain between the illegal detention and the seizure of the evidence, the firearm should have been suppressed. *See Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000) ("Where … a consensual search has been preceded by an unlawful seizure, the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the government … of a sufficient break in the causal chain between the illegality and the seizure of evidence….") Because we conclude that the trial court erred when it failed to suppress the seized evidence, we reverse the order denying Appellant's suppression motion and remand for further proceedings. Accordingly, Appellant's weight-of-the-evidence claim is rendered moot by our decision.

Dispositional order *vacated*. Case *remanded* for further proceedings consistent with this memorandum. Jurisdiction *relinquished*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2016